**William HENDERSON, Plaintiff–Appellant,**

v.

**MASTER KLEAN JANITORIAL, INC., Defendant–Appellee.**

No. 02CA0637.

Colorado Court of Appeals, Div. III.

April 10, 2003.

Darrell S. Elliott, P.C., Darrell S. Elliott, Timothy P. McCaffrey, Kristen A. Spaeth, Denver, Colorado, for Plaintiff–Appellant.

White & Steele, P.C., Kevin W. Hecht, Franz Hardy, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this premises liability action, plaintiff, William Henderson, appeals from the summary judgment dismissing his complaint against defendant, Master Klean Janitorial, Inc. We affirm.

Plaintiff alleged that he was injured when he slipped and fell down a flight of stairs at his place of employment, a telephone call center in an office building which his employer leased from the building owner. Plaintiff asserted that as he descended the stairs from the second floor to the first, he slipped on water present on the steps.

Pursuant to the premises liability act, § 13–21–115, C.R.S.2002, plaintiff sued defendant, a contractor hired by the property manager on behalf of the owner to perform cleaning and maintenance services at the building. The complaint alleged, inter alia, that defendant was in possession and control of the premises, permitted a dangerous condition to exist, and failed to warn of the existence of the condition.

Defendant moved for summary judgment, which the trial court granted on two alternative bases: (1) defendant was not a landowner as defined under the act; and (2) as a matter of law, defendant did not breach the duty of care owed to plaintiff. Because we agree with the trial court that defendant did not breach the duty of care owed to plaintiff, we affirm.

Our review of an order granting a motion for summary judgment is de novo. *See Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo. 1995).

I.

Plaintiff first contends that the trial court erred in determining that defendant was not a "landowner" under § 13–21–115. We agree.

The premises liability act sets forth when a "landowner" may be held liable for the condition of or activities conducted on its property, *Casey v. Christie Lodge Owners Ass'n*, 923 P.2d 365 (Colo.App.1996), and provides the exclusive remedy against a landowner for injuries sustained on the landowner's property. *Thornbury v. Allen*, 991 P.2d 335 (Colo.App.1999); *see also Sofford v. Schindler Elevator Corp.*, 954 F.Supp. 1459 (D.Colo.1997).

Under § 13–21–115(1), C.R.S.2002, a "landowner" is defined as including, "without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." These definitions must be read in the disjunctive. *See Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo.2002)(*Pierson II*)(landowner definition directs alternative inquiries); *see also Wark v. United States*, 269 F.3d 1185 (10th Cir.2001)("landowner" includes three types of persons: agents, possessors, and parties legally responsible for the condition of the property).

Relying on *Pierson v. Black Canyon Aggregates, Inc.*, 32 P.3d 567 (Colo.App.2000)(*Pierson I*), defendant argued, and the trial court agreed that, absent exclusive possession and some type of ownership or leasehold interest in the property, a party does not fall within the definition of "landowner" for purposes of the act. Thus, under that rationale, the trial court determined that here, defendant was not a "landowner."

However, after the trial court's ruling, the supreme court reversed *Pierson I*, concluding in relevant part that the General Assembly intended a broad definition of landowner and, therefore, for purposes of § 13–21–115(1), "possession" of property is not dependent upon title and need not be exclusive. In its decision, the court cited the definition of the term "possessor of land" as set forth in the Restatement (Second) of Torts § 328E (1965) as "a person who is in occupation of the land with intent to control it." *See Pierson II, supra*, 48 P.3d at 1219. The supreme court determined that the defendant had maintained requisite control over the property to be considered in possession of it and, thus, was a "landowner" pursuant to the act.

Defendant argues, however, that unlike the circumstances in *Pierson II*, it did not control those areas of the facility that it had contracted with the owner to clean. Specifically, defendant points to its contract for services that sets forth in explicit detail the tasks which defendant was required to per-

form on a daily, weekly, monthly, and quarterly basis for the ground floor lobby, public areas, tenant occupied areas, tenant unoccupied areas, restrooms, and loading dock area.

Moreover, defendant asserts that, unlike the facts in *Pierson*, where the defendant performed gravel crushing activity on property designated a gravel pit, here, defendant has no interest in the office building or the telephone call center. Rather, defendant incidentally provides janitorial services at the building. Plaintiff has established no other connection between defendant and the building or the call center.

We agree with defendant. Under the undisputed terms of defendant's contract with the owner's property manager, the latter retained control over the maintenance of the facility, including the manner and method of defendant's cleaning services. *Cf. Pierson II, supra* (defendant contractor maintained authority to control performance of details of the work, while lessee was interested only in the results obtained). Thus, conversely, we conclude that defendant was not sufficiently in control of the property to be a "landowner" on this basis.

Likewise, we agree that the purpose of defendant's business, to maintain the property, was not sufficiently linked to the purpose of the property for defendant to be in possession of it. *Compare Pierson II, supra* (where lessee is interested only in the results to be achieved and delegates the conduct and control of the work to a contractor, the contractor is deemed to be in possession of the property), *with Jules v. Embassy Props., Inc.*, 905 P.2d 13 (Colo.App.1995)(landowner who hired third party to manage its property did not give up its right to possession of the property), *Wiedmeyer v. Equitable Life Assurance Soc'y*, 644 N.W.2d 31 (Iowa 2002)(property owner was deemed possessor of shopping mall even though owner contracted with third party for snow removal on the property), *and Wilson v. River Market Venture, I, L.P.*, 996 S.W.2d 687 (Mo.Ct.App.1999)(landowner retains possession of premises if it has substantial involvement in overseeing contractor's work and controlling the physical activities of contrac-

tor's employees or the details of the manner in which the work is done).

Plaintiff argues, however, that even if defendant did not possess the property, it is still a landowner under § 13–21–115(1) because it was legally responsible for creating a condition or conducting an activity on the property that allegedly resulted in injury to plaintiff. We agree.

The common definition of a "responsible" person is one who is likely to be called upon to answer for his acts, answerable as the primary cause, motive, or agent, or creditable or chargeable with the result. *Webster's Third New International Dictionary* 1935 (1976).

Here, pursuant to its contractual obligation to clean the facility, defendant was responsible for conducting an activity on the property that allegedly resulted in injury to plaintiff. It is undisputed that plaintiff slipped and fell on water present on the stairs and that defendant had a contractual obligation to mop up any spills of which it was aware. It is further undisputed that defendant's employee, the day porter on duty at the building, received a call to clean up a spill on the stairwell where plaintiff fell.

Thus, defendant, through the day porter, had a legal responsibility for the condition of the stairs and was potentially liable for injuries resulting from that condition, pursuant to its contract. *Cf. Wark v. United States, supra* (defendant not legally responsible for condition of road because it never contracted with record owner to maintain road).

Accordingly, we conclude as a matter of law that defendant is a "landowner" pursuant to § 13–21–115(1), under the circumstances here. Consequently, the trial court's grant of summary judgment to defendant on this basis was error.

## II.

However, we agree with the trial court's alternative ruling, albeit on different reasoning, that summary judgment nevertheless was proper because even if defendant is a landowner, the undisputed facts demonstrate that defendant did not breach the duty of care owed to plaintiff. *See Sundheim v. Bd.*

*of County Comm'rs,* 904 P.2d 1337 (Colo. App. 1995), aff'd, 926 P.2d 545 (Colo. 1996). (when possible, appellate court is to affirm even if it is necessary to do so on grounds different from those relied upon by trial court).

Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007 (Colo. 1992). In reviewing a motion for summary judgment, we must view the allegations in the complaint in the light most favorable to the nonmoving party. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

### A.

■ Under the premises liability act, the General Assembly imposes certain duties upon landowners to promote responsibility by both landowners and those on the land and to ensure that an injured party's ability to recover is correlated with his or her status as a trespasser, licensee, or invitee. Section 13–21–115(1.5)(a), C.R.S.2002.

As relevant here, an invitee is one who "enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." Section 13–21–115(5)(a), C.R.S.2002. In contrast, a licensee is one who "enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent." Section 13–21–115(5)(b), C.R.S.2002.

The status of an injured party and the appropriate standard of care are determined by the relationship between the injured party and the landowner. *See* § 13–21–115(4), C.R.S.2002 (court shall determine entrant's status as to each landowner); *Pedge v. RM Holdings, Inc.,* —— P.3d ——, 2002 WL 31834684 (Colo.App. No. 01CA2239, Dec. 19, 2002)(plaintiff was not a licensee with respect

to management association); *Maes v. Lakeview Assocs., Ltd.*, 892 P.2d 375 (Colo.App. 1994), *aff'd*, 907 P.2d 580 (Colo.1995).

Here, plaintiff alleged that defendant was an invitee because he was on the property to transact business in which he, the owner of the building, and the lessee, plaintiff's employer, were mutually interested, and he was expected or intended to enter. Defendant asserts that, as to it, plaintiff was not an invitee because it had no business relationship with him, nor was their relationship mutually beneficial, and it did not represent to plaintiff that he was requested or expected to enter onto the property. We agree with plaintiff.

Here, it is undisputed that plaintiff entered the building in response to the owner's and lessee's express or implied representation that as an employee, he was expected or intended to enter. *See generally* Restatement (Second) of Torts § 332(2) & cmt. b (1965)(public invitee is a person invited to enter the property for the purpose for which the land is held open to the public; an invitation is behavior that justifies a person in believing the possessor desires him or her to enter the property). Certainly, as to the owner and lessee, plaintiff was an invitee.

By virtue of its contract, defendant was responsible for providing a clean and safe environment for the benefit of all legitimate entrants to the building. And, because an owner or lessee otherwise has an obligation to maintain its property, we do not agree that an injured person's status as an invitee with respect to an owner or lessee should change with respect to the party to whom these particular tasks have been delegated.

Accordingly, we conclude that defendant owes plaintiff the duty of care which the premises liability act imposes upon a landowner with respect to an invitee.

### B.

■ An invitee may recover under the premises liability act only for damages "caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Section 13–21–115(3)(c)(I), C.R.S.2002.

Plaintiff contends that there is a disputed issue of fact whether defendant breached this duty by failing to inspect the stairs for wetness. Plaintiff asserts that because it was a snowy day, defendant should have anticipated that the stairs would be wet and, thus, exercised reasonable care to protect against this danger. We disagree.

Defendant's contract for services requires defendant to "spot mop" any spills on the tile floor areas on a daily basis and "check" and clean the common areas, halls, columns, walls, and baseboards for spots or spills at 9:30 a.m. daily.

The term "check" commonly means to "inspect for satisfactory condition, accuracy, safety, or performance." The term "anticipate" means to "foresee and deal with in advance." *Webster's New Collegiate Dictionary* 49, 190 (2d ed.1974).

The unrefuted evidence does not support plaintiff's contention that defendant had a duty to anticipate wetness. Rather, defendant was only obligated to check periodically for spills and to mop up any spills that were reported to it.

The day porter testified that he had used this stairwell less than one hour before plaintiff fell, and it was unrefuted that the stairs were not wet at that time.

Plaintiff submitted no evidence that defendant's employee failed to exercise reasonable care upon being notified of the spill. Rather, the day porter testified at his deposition that when he was notified of the spill, he immediately proceeded to the janitor's closet to retrieve a mop and caution sign and arrived at the location of the reported spill within three to five minutes. Upon his arrival, he saw plaintiff lying on the landing between the two flights of stairs. He then placed a caution sign at the top of the stairs to prevent further injuries. Plaintiff submitted no evidence to suggest that the employee could have reacted more quickly or in a different manner.

■ Plaintiff points, however, to an incident report submitted by defendant in its

motion for summary judgment. In this report, a security guard at the facility recorded that he had been informed by the day porter, through an interpreter, that upon being notified of the spill, the day porter went to the stairwell and cleaned the upper stairs, and while mopping the lower stairs, he heard plaintiff fall. Plaintiff argues that this report directly contradicts the day porter's later deposition testimony that when he arrived to clean up the spill, plaintiff had already fallen. We conclude that the report was insufficient to create a genuine issue of fact under C.R.C.P. 56(e)(affidavits must set forth facts admissible in evidence).

Although the trial court did not specifically address the issue in its findings, when defendant submitted the report with its brief on summary judgment, defendant argued that the report was inadmissible.

On appeal, defendant similarly asserts that the interpreter's translation of the day porter's statement constitutes inadmissible hearsay, and that plaintiff failed to lay the requisite foundation for admission of the report by not offering evidence of authentication. We agree.

Under CRE 803(6), a report promptly made from information transmitted by a person with knowledge, if the report is kept in the course of a regularly conducted business activity and it is the regular practice of the business to make such a report, as shown by the testimony of the custodian or other qualified witness, is excluded from the hearsay rule, unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

■ The business records exception is founded on a presumption of accuracy that exists because the information is reported by persons trained in the importance of precision and checked for its correctness, and because of the accuracy demanded by the nature of the business. *See United States v. Snyder,* 787 F.2d 1429 (10th Cir.1986).

■ Statements by a third party included in a business record are not granted the same presumption of accuracy because the third party has no business duty to report the information accurately. Thus, statements by a third party are generally not admissible. *See Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990); *see, e.g., United States v. Snyder, supra* (third party statements included in a police report held inadmissible).

Authentication of a document is a condition precedent to its admissibility and is satisfied by a showing that the document is what the proponent claims it to be. CRE 901; *Rojhani v. Meagher,* 22 P.3d 554 (Colo.App.2000). A business record is self-authenticating when accompanied by an affidavit of its custodian or other qualified witness certifying that the record was made by a person with knowledge in the course of the regularly conducted activity and that it was the regular practice of the party to make such a record. CRE 902(11).

Here, plaintiff offered no evidence as to who recorded the incident report or whether the report was kept in the ordinary course of the security company's business. Furthermore, plaintiff offered no evidence that the security guard had knowledge of the truthfulness of the information being recorded, and the statement was not sworn. *Compare Leiting v. Mutha,* 58 P.3d 1049 (Colo.App.2002)(plaintiff failed to lay necessary foundation for admission of report under business record exception as witness did not prepare the document, was not its custodian, and did not explain how or why it was prepared) *with Metro Nat'l. Bank v. Parker,* 773 P.2d 633 (Colo.App.1989)(proper foundation established under CRE 803(6) as evidence showed that bank records from which party prepared summary were kept in regular course of business).

Additionally, the interpreter, a Spanish-speaking supervisor from the lessee's customer service department, did not conduct the interpretation in the regular course of business of either the lessee or the security company. Thus, she had no business duty to translate accurately, and there is no evidence that her translation was in fact accurate. *Cf. People v. Villagomez,* 313 Ill.App.3d 799, 246 Ill.Dec. 708, 730 N.E.2d 1173 (2000) (interpreter translated defendant's statement into English, read back each sentence to defendant in Spanish, asked if each was correct, read entire corrected statement to defendant

in Spanish, and had defendant sign the written statement and initial the bottom of each page).

Accordingly, we agree with defendant that any discrepancies in the report were inadmissible to create a disputed issue of fact. *See* C.R.C.P. 56(e); *USA Leasing, Inc. v. Montelongo*, 25 P.3d 1277 (Colo.App.2001)(affidavits must contain evidence that would be admissible at trial); *People v. Hernandez & Assocs., Inc.*, 736 P.2d 1238 (Colo.App.1986)(affidavits based on inadmissible hearsay are insufficient for purpose of summary judgment). Thus, the trial court did not err in granting summary judgment to defendant.

The judgment is affirmed.

Judge ROY and Judge WEBB concur.