The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 3, 2025

**2025COA37**

**No. 24CA0369, *Willis v. Twin Shores Master Owner Association, Inc.* — Torts — Premises Liability; Real Property — Common Interest Communities — Colorado Premises Liability Act — Injured Party's Status — Invitee**

As a matter of first impression, a division of the court of appeals considers the standard of care a common interest community association owes to a unit owner's guest who is injured in an area that is part of the common elements owned and controlled by the association.  The division concludes that, in relation to such an association, a unit owner's guest is an invitee under the Colorado Premises Liability Act (PLA), § 13-21-115, C.R.S. 2024.

Because the division concludes that there is a genuine dispute of material fact as to where the plaintiff fell — and whether that location was part of the common elements owned and controlled by

the association — the division reverses the district court's grant of summary judgment in favor of the defendants on the plaintiff's PLA claim and remands the case for further proceedings.

Court of Appeals No. 24CA0369
Jefferson County District Court No. 22CV30123
Honorable Ryan P. Loewer, Judge

Tiffani Willis,

Plaintiff-Appellant,

v.

Twin Shores Master Owner Association, Inc., and Hammersmith Management, Inc.,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

Announced April 3, 2025

Fuicelli & Lee, P.C., R. Keith Fuicelli, Matthew Durkin, Denver, Colorado; The Paul Wilkinson Law Firm LLC, Nelson Boyle, Denver, Colorado, for Plaintiff-Appellant

SGR, LLC, Heather A. Salg, Jean M. Peterson, Denver, Colorado, for Defendants-Appellees

¶ 1     This slip-and-fall case presents a novel issue concerning the standard of care a common interest community association owes to a unit owner's guest who is injured in an area that is part of the common elements owned and controlled by the association. We conclude that, in relation to such an association, a unit owner's guest is an invitee under the Colorado Premises Liability Act (PLA), § 13-21-115, C.R.S. 2024.

¶ 2     Accordingly, we reverse the district court's entry of summary judgment in favor of the defendants, Twin Shores Master Owners Association, Inc., and Hammersmith Management, Inc., on the PLA claim asserted by the plaintiff, Tiffani Willis. The judgment was predicated on the conclusion that Willis was the defendants' licensee at the time of her injury and didn't present sufficient facts to establish liability to her as a licensee. We conclude, however, that if Willis was injured in an area that was part of the common elements owned and controlled by the association — an issue on which there is a genuine dispute of material fact — then she was the defendants' invitee. We therefore reverse the judgment and remand the case for further proceedings.

## I.     Background

¶ 3      Twin Shores is organized as a planned community under the Colorado Common Interest Ownership Act (CCIOA).  *See* § 38-33.3-103(22), C.R.S. 2024.  Twin Shores Master Owners Association, Inc., is the unit owners' association, and Hammersmith Management, Inc., is its management company.  Under the community's declaration, the association owns, controls, and maintains the common elements — including parks and walkways — for the unit owners' benefit, use, and enjoyment.  The unit owners, in turn, have a nonexclusive easement for themselves and their tenants, agents, employees, customers, contractors, licensees, guests, and invitees to use those common elements.

¶ 4      At the time in question, Willis was in a long-term romantic relationship with the owner of a townhome in Twin Shores.  Willis wasn't on the title to the unit but contends that she resided there with her partner.  Willis also contends that, as a resident, she paid for upkeep on and upgrades to the unit, participated as the unit's representative in the association, paid the unit's association dues on at least one occasion, and served as vice president of the association's board of directors.

¶ 5    In her complaint, Willis alleges that one winter she slipped and fell while walking on "a sidewalk adjacent to the common area and residences that was covered with snow and ice," causing her to suffer significant injuries.  However, the parties contest precisely where the accident occurred and whether it was on a sidewalk, in the park, or elsewhere, including potentially on property not owned and controlled by the association.

¶ 6    In response to motions filed early in the case, the district court determined that, at the time of her injury, Willis wasn't in a mutually beneficial financial relationship with the defendants and therefore was a licensee under the PLA.  Based on that ruling, the court precluded Willis from obtaining discovery the court found irrelevant due to her status as a licensee.  The court later granted summary judgment in favor of the defendants, concluding that Willis hadn't presented sufficient evidence to satisfy her burden as a licensee of showing that the defendants had actual knowledge of the alleged dangerous condition before the time of her fall.

## II.    The PLA

¶ 7    On appeal, Willis contends that the district court erred by ruling as a matter of law that she was a licensee under the PLA.  We

conclude that there are factual questions as to whether Willis was a licensee or an invitee of the defendants, making summary judgment inappropriate.

### A. Standard of Review

¶ 8 We review de novo a district court's grant of summary judgment. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 11. Likewise, where the controlling facts are not in dispute, we review de novo a district court's determination of a party's status under the PLA. *Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 583-84 (Colo. 1995).

¶ 9 Summary judgment should be granted only when the pleadings and supporting documentation show that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Ruiz v. Chappell*, 2020 COA 22, ¶ 8. The moving party bears the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of any such issue must be resolved against the moving party. *Stanczyk v. Poudre Sch. Dist. R-1*, 2020 COA 27M, ¶ 51, *aff'd on other grounds*, 2021 CO 57.

## B. Legal Standards

¶ 10    The PLA governs the extent of a landowner's liability "[i]n any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property." § 13-21-115(3).  This statute provides the sole remedy against landowners for injuries on their property.  *Tolle v. Steeland, LLC*, 2023 COA 84, ¶ 21.

¶ 11    The standard of care a landowner owes a person under the PLA depends on the person's status as a trespasser, a licensee, or an invitee.  *See* § 13-21-115(2)(c)(I), (4); *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2015 CO 24, ¶ 18.  An injured party's status is "determined by the relationship between the injured party and the landowner."  *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 615 (Colo. App. 2003); *see also Maes*, 907 P.2d at 584 ("[T]he distinction between an invitee and a licensee . . . depends on the nature of the relationship between the landowner and the person who enters or remains on the landowner's property.").  This case concerns two of those three statuses — licensee and invitee.

¶ 12    A licensee is someone "who enters or remains on the land of another for the licensee's own convenience or to advance the licensee's own interests, pursuant to the landowner's permission or consent." § 13-21-115(7)(c).  This includes a social guest.  *Id.*  A licensee may recover damages caused by a landowner's "unreasonable failure to exercise reasonable care with respect to dangers created by the landowner that the landowner actually knew about" or "unreasonable failure to warn of dangers not created by the landowner that are not ordinarily present on property of the type involved and that the landowner actually knew about." § 13-21-115(4)(b)(I)-(II).

¶ 13    An invitee, by contrast, is someone "who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." § 13-21-115(7)(a).  An invitee, then, is an individual who is present to transact business of mutual interest or as the result of an invitation extended to the public.  *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1267-68 (Colo. App. 2010)

(*Wycoff I*). An invitee generally may recover damages caused by a landowner's "unreasonable failure to exercise reasonable care to protect against dangers the landowner actually knew about or should have known about." § 13-21-115(4)(c)(I).

### C. Application

¶ 14 The parties argue at length whether Willis's claimed residency in one of the units, her payment to and volunteer work for the association, or other facts specific to her relationship with the association control the determination of whether she was a licensee or an invitee. We conclude instead that the two controlling facts are (1) whether Willis was, at a minimum, the guest of a unit owner and (2) whether her injury occurred in an area that is part of the common elements owned and controlled by the association. The first fact is undisputed, but the second remains in dispute. Accordingly, the entry of summary judgment was inappropriate.

¶ 15 In reaching this conclusion, we first consider the standard of care landlords owe tenants and their guests in common areas. We then turn to cases from other states applying a similar standard to common interest community associations and unit owners' guests using common elements. Finally, we join those states in concluding

that a unit owner's guest is the association's invitee with respect to common elements owned and controlled by the association.[1]

¶ 16    In the landlord-tenant context, Colorado courts treat tenants as invitees in common areas a landlord controls for tenants' use. *See Maes*, 907 P.2d at 585. As the supreme court explained in *Maes*, "An apartment lease . . . reflects an agreement mutually obligating the tenant and the landlord" and "benefit[ting] both parties." *Id.* at 584. The landlord receives periodic payments of rent while the tenant receives access to the leased premises and a right to use the common areas. *Id.* at 584-85. This effectively makes tenants "patron[s] of the [landlord's] business," such that tenants are the landlord's business invitees when using the common areas. *Id.*; *see also Van Schaack & Co. v. Perkins*, 272 P.2d 269, 270 (Colo. 1954) (expressing the pre-PLA common law rule that "when a landlord retains control of portions of a building for the use and benefit of all the tenants, [the landlord] is under [a]

---

[1] We have no occasion to, and therefore do not, consider whether the duties are the same where the common elements are owner owned. *Cf. Trailside Townhome Ass'n v. Acierno*, 880 P.2d 1197, 1200-03 (Colo. 1994). We consider only the duties arising where, as here, the common elements are association owned.

8

duty to exercise reasonable care to keep those portions in a safe condition for use by the tenants").

¶ 17    Colorado courts, like courts in other states, have applied this same rule to a tenant's guests, treating such guests as a landlord's invitees in their use of common areas controlled by the landlord. *See, e.g.*, *Palmer Park Gardens, Inc. v. Potter*, 425 P.2d 268, 271 (Colo. 1967) (a tenant's guest injured in a parking lot intended for the use of tenants and their guests was the landlord's invitee); *Perez v. Grovert*, 962 P.2d 996, 998 (Colo. App. 1998) (a landlord may be liable to a tenant's guest if the landlord "retained control over the portion of the premises where [a dangerous] condition existed" (citing Restatement (Second) of Torts § 360 (Am. L. Inst. 1965))); *Petraszewsky v. Keeth*, 506 N.W.2d 890, 893 (Mich. Ct. App. 1993); *Burch v. Univ. of Kan.*, 756 P.2d 431, 435 (Kan. 1988); *Slusher v. State*, 437 N.E.2d 97, 99 (Ind. Ct. App. 1982); *Rennick v. Hoover*, 606 P.2d 1079, 1081 (Mont. 1980), *overruled in part on other grounds by Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 950 P.2d 748 (Mont. 1997); *see also* Restatement (Second) of Torts § 360 ("A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use . . . is

9

subject to liability to his lessee and others lawfully upon the land with the consent of the lessee . . . for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."); Restatement (Second) of Prop.: Landlord and Tenant § 17.3 (Am. L. Inst. 1977) (similar statement of the law).[2]

¶ 18    The rationale for treating a tenant's guest as the landlord's invitee is that part of the landlord's business, and part of the consideration the landlord receives from the tenant, relates to holding common areas open for the use of tenants and their guests. As comment f to section 360 of the Restatement (Second) of Torts explains, "If the terms of the lease entitle the [lessee] to permit third persons to come upon the part of the land retained within the lessor's control, it is immaterial whether they come as invitees of

---

[2] The defendants cite *Wilson v. Marchiondo*, in which a division of this court treated a tenant's social guest as the landlord's licensee. 124 P.3d 837, 841 (Colo. App. 2005). But in that case, the guest's injury occurred in the backyard of the leased property — not in a common area controlled by the landlord. *Id.* at 838, 841.

the lessee or as his licensees" because "[i]t is the lessor's business . . . to afford his lessee facilities for receiving all persons whom he chooses to admit for any legitimate purpose." Thus, even if a guest is a licensee as to the lessee, that guest "enters the land on a matter directly connected with the business of the lessor" and is "entitled to expect that the lessor will exercise reasonable care to discover and remedy any [dangerous] condition." *Id.*; *see also* Restatement (Second) of Torts § 332 cmt. k (similar comment); Restatement (Second) of Prop.: Landlord and Tenant § 17.3 cmt. h (same); *Slusher*, 437 N.E.2d at 99 ("[T]he duty to maintain common areas retained under the landlord's control in a safe condition 'extends also to members of the tenant's family, his employees, his invitees, his guests, and others on the land in the right of the tenant, since their presence is a part of the normal use of the premises for which the lessor holds them open.'" (quoting William L. Prosser, *Law of Torts* § 63, at 406 (4th ed. 1971))); *Rennick*, 606 P.2d at 1081 ("[T]he landlord is in the business of providing facilities for a tenant to receive all persons for lawful purposes; therefore, the presence of a guest is related to the property owner's business.").

¶ 19    Several courts have extended this same rationale to common interest communities, holding that unit owners and their guests are an association's invitees in their use of common elements controlled by the association. *See, e.g.*, *Janini v. London Townhouses Condo. Ass'n*, ___ N.W.3d ___, No. 164158, 2024 WL 3381445, at *5 (Mich. July 11, 2024); *Walters v. Beach Club Villas Condo., Inc.*, 301 So. 3d 343, 348 (Fla. Dist. Ct. App. 2020); *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 381 (Md. Ct. Spec. App. 2019); *Sevigny v. Dibble Hollow Condo. Ass'n*, 819 A.2d 844, 855 (Conn. App. Ct. 2003); *see also Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 941 P.2d 218, 221 (Ariz. 1997) ("[A] condominium association has a duty not only to the unit owners and their tenants but also to those who are on the land with their consent and who will inevitably be expected to use common areas . . . .").

¶ 20    In doing so, some courts have described "a unit owner's relationship with [an] association as being akin to a tenant's relationship to a landlord with regard to the common areas," such that it makes sense to apply the same standard of care. *Sevigny*, 819 A.2d at 855 (collecting cases). As one court explained,

12

Because a landlord exercises exclusive control over the common areas of the premises, the landlord is the only one who can take the necessary precautions to ensure that the common areas are safe for those who use them. Similarly, a cooperative association has exclusive control over the common areas of the cooperative, and the association is the only one that can act to make the common areas safe. We are satisfied that with regard to premises liability, the duty a cooperative association owes those who come on the premises is the same as the duty a landlord owes those who come on its premises.

*Stanley v. Town Square Coop.*, 512 N.W.2d 51, 53 (Mich. Ct. App. 1993). The court went on to explain that just as a portion of a tenant's rent may be deemed consideration for the right to invite guests to use the common areas, so may a portion of a unit owner's payments to an association be deemed consideration for the right to invite guests to use the common elements. *Id.* at 54; *see also Janini*, 2024 WL 3381445, at *5 (similar reasoning); *Martinez*, 941 P.2d at 221 (same).

¶ 21    We agree with this reasoning. Although no published opinion in Colorado has directly confronted this issue, the supreme court has recognized that an association's control over common elements used by owners is "analogous" to a landlord's control over common

13

areas used by tenants. *Trailside Townhome Ass'n v. Acierno*, 880 P.2d 1197, 1203 (Colo. 1994). It is also clear that "direct dealings with a landowner" are not required for an individual to hold the status of invitee. *Wycoff v. Seventh Day Adventist Ass'n of Colo.*, 251 P.3d 1258, 1259 (Colo. App. 2010) (*Wycoff II*).

¶ 22 Like a landlord, a common interest community association generally assumes control over a community's common elements. *See* § 38-33.3-302(1)(f), C.R.S. 2024 ("Except as provided in [CCIOA], and subject to the provisions of the declaration, the association . . . may . . . [r]egulate the use, maintenance, repair, replacement, and modification of common elements . . . ."); § 38-33.3-307(1), C.R.S. 2024 ("Except to the extent provided by the declaration [or CCIOA], the association is responsible for maintenance, repair, and replacement of the common elements . . . ."); *see also* § 38-33.3-103(5)(b) ("In a planned community," common elements include "any real estate within [the community] owned or leased by the association, other than a unit."). The same is true of the association in this case, as the declaration charges it with controlling and maintaining the common elements for the use of the unit owners and their guests.

¶ 23    And like a landlord-tenant lease, an association's declaration "reflects an agreement mutually obligating the [unit owners] and the [association]" that "benefit[s] both." *Maes*, 907 P.2d at 584. As part of the arrangement in a planned community like this one, the association receives periodic dues payments while the unit owners receive the right to invite their guests to use the common elements. *See id.* at 584-85; *see also* § 38-33.3-216(2), C.R.S. 2024 ("In a planned community, subject to the provisions of the declaration and the ability of the association to regulate and convey or encumber the common elements . . . , the unit owners have an easement: (a) [i]n the common elements for the purpose of access to their units; and (b) [t]o use the common elements and all other real estate that must become common elements for all other purposes.").

¶ 24    In that regard, if the association allows guests to use the common areas it owns and controls, then it is part of the association's business to provide those facilities for the use of unit owners' guests, and those guests are "entitled to expect that the [association] will exercise reasonable care to discover and remedy any [dangerous] condition." Restatement (Second) of Torts § 360 cmt. f; *see also* Restatement (Second) of Prop., Landlord and Tenant

15

§ 17.3 cmt. h; *Stanley*, 512 N.W.2d at 53; *Slusher*, 437 N.E.2d at 99; *Rennick*, 606 P.2d at 1081. Accordingly, when, as here, the association owns and controls common elements, the unit owners' guests are effectively "patron[s] of the [association's] business," such that they are business invitees in their use of those common elements. *Maes*, 907 P.2d at 584-85.

¶ 25   We therefore conclude that, as to an association, a unit owner's guest is afforded invitee status under the PLA in areas that are part of the common elements owned and controlled by the association.[3] This is so irrespective of whether the guest is the licensee or the invitee of the unit owner. Because an individual's status under the PLA depends on their relationship to the landowner, *see Maes*, 907 P.2d at 584; *Henderson*, 70 P.3d at 615, that status may differ as between two or more persons deemed to be

---

[3] We acknowledge that in *Wright v. Vail Run Resort Community Ass'n*, a division of this court treated a unit owner's guest as the association's licensee with respect to an injury incurred in an area owned, managed, and maintained by the association. 917 P.2d 364, 365-66 (Colo. App. 1996). But there was no analysis in that case explaining why the guest was deemed a licensee or whether that issue was even contested. *See id.* To the extent that our opinion conflicts with *Wright*, we decline to follow it. *See Indep. Reservoir Co. v. Lichter*, 2025 COA 13, ¶ 16 (one division of this court isn't bound by the holding of another division).

landowners under the PLA.  *See generally Wycoff I*, 251 P.3d at 1266-68 (assessing an individual's status as to the organization that held the event at which she was injured); *Wycoff II*, 251 P.3d at 1259-60 (separately assessing the same individual's status as to the owner of the ranch where she was injured); *see also* Restatement (Second) of Torts § 332 cmt. k (a tenant's guest may be a landlord's invitee in common areas regardless of whether they are a licensee or an invitee as to the tenant); Restatement (Second) of Torts § 360 cmt. f (same); Restatement (Second) of Prop., Landlord and Tenant § 17.3 cmt. h (same).  Thus, while the PLA declares that a social guest is a licensee, *see* § 13-21-115(7)(c), we consider that status to apply only as to the person who invited the guest — here, the unit owner — and not necessarily as to others who may be deemed landowners — here, the association and its management company.

¶ 26    Applying this rule to this case, because it is undisputed that Willis was, at a minimum, the guest of a unit owner but it is disputed whether her injury occurred in an area that is part of the common elements owned and controlled by the association, the entry of summary judgment was improper.  Accordingly, we reverse

the district court's grant of summary judgment and remand the case for further proceedings.

## III. Disposition

¶ 27 The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE FOX and JUDGE LUM concur.